**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

KYLE A. CAVALIERE

PLAINTIFF

vs.

COMCAST CABLE COMMUNICATIONS, LLC, it's parents, affiliates, agents, and subsidiaries

DEFENDANT

CASE#  2:21-cv-00323

DEMAND FOR JURY TRIAL

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

AND NOW comes the Plaintiff, **Kyle A. Cavaliere**, (hereinafter "Plaintiff"), and brings forth this Complaint and sue the Defendant, **Comcast Cable Communications, LLC, it's parents, affiliates, agents, and subsidiaries,** (hereinafter "Defendant"), for the below mentioned causes of action and allege the following:

**INTRODUCTION**

1. The Plaintiff and Defendant together initiated a service of Internet, TV service, and Phone service together labeled as "Xfinity X1 Triple Play" (hereinafter "X1") on February 19, 2018. On that day Defendant sent an email confirmation itemizing the package and the cost of said package. That cost was only ever seen a few times over a 3 year period due to the Defendant's deceptive, unfair, unconscionable, and fraudulent business tactics.

**PARTIES**

2. The Plaintiff is an adult residing in Fort Myers, Florida now and at all times relevant to this matter.

3. The Defendant is a foreign corporation duly licensed to conduct business in Florida now and at all times relevant to this matter with a principal place of business in Philadelphia, Pennsylvania.

4. All acts and omissions complained herein occurred in Florida.

5. The parties sued in this Complaint are believed to have been involved and contributed whole or in part in some of the injurious acts and omissions complained of herein and are liable for their actions to some degree to be determined at the time of trial. At such time their actual identities and capacities are ascertained the Plaintiff will supplement this Complaint.

## JURISDICTION

6. This Court has jurisdiction over this action pursuant to a matter of federal question of 28 U.S.C.§1331.

7. This Court has jurisdiction over this action pursuant to a matter of federal question of 18 U.S.C.§1961.

8. This Court is proper over this action pursuant to 28 U.S.C.§1391 because at all times relevant to this action, the acts or omissions giving rise to the claims and the injuries occurred in this District.

9. This Court has Jurisdiction over this action pursuant to 28 U.S.C.§1332 because of the Diversity of citizenship between the Plaintiffs and the Defendant and this is an action seeking damages in excess of $75,000, exclusive of attorneys' fees and court costs.

## FACTUAL BACKGROUND

10. On or about February 19, 2018 Plaintiff entered into a service plan with the Defendant for X1.

11. The Defendant sent a confirmation email outlining the services to be offered, the timeframe and the pricing outline, and what was included above the normal services. (attached hereto as "Exhibit A")

12. In the email the pricing was very specific along with the timeframes that the pricing would last, it states that the pricing would be "$159.99 per month for 24 months, then $189.00 per month for 25-36."

13. It also included various movie channels such as Cinemax, Starz, HBO, etc. as described in Exhibit A.

14. The very first bill that was sent by Defendant was incorrect. However, the inaccuracies were minimal and attempts to have the inaccuracies corrected would be futile.

15. From that point forward the bills were random in nature.

16. The Defendant has a customer service department that is frustrating by design and free of representatives from the United States. This design is meant to create a frustrating experience and invoke a level of anger and frustration in order to discourage the customer from pursuing their goal.

17. The Defendants have claimed in the past that this is not the intention and that it is just unfortunate coincidence, however, if you call and ask to speak to the other various departments such as new service, business, or technical, the experience is very quick and complete. When the billing or the complaint departments are

called it is literally hours of hold times, disconnected phone calls, multiple different transfers, ultimately resulting in repeating yourself numerous times and getting a representative that lies directly to you or reads from a script and hangs up on you.

18. The Defendants have designed their system strategically in an attempt to prevent them from providing a resolution and affording them the luxury of making charges to the customer for whatever they want without any cause for consequence.

19. The same is true for their service department. Although the last interaction the Plaintiff and the Defendant for service has been completed and no issues has been experienced recently, it took a matter of approximately 3 months to have the issue resolved and multiple repeat visits, many inconveniences, and service interruptions, and supervisors needing to be contacted.

20. The fees that the Defendants charge are so outrageous and egregious that their representatives cannot even duplicate the explanation nor can they explain the charges accurately. One could call and speak to a representative and ask for an explanation, hang up and immediately call back and get a different explanation from a different representative.

21. An example of such confusion is that representatives in the past have explained the various charges and when asked to add them up mathematically they cannot come to the same sum as what is being printed on the bill.

22. The Defendant is fraudulently charging erroneous fees haphazardly and does so in a manor as to hide behind the various exceptions afforded to them by the Public Service Commission.

23. The Defendant is engaging in a manor as to defraud the consumer and hide behind a system of intentionally misleading and frustrating deterrents to induce dissatisfaction and surrender.

24. On January 28, 2020 on a call with the Defendant, it was explained that all the fees shown on the bills are federally mandated and are not imposed by the Defendant.

25. During a conversation February 2, 2020 it was explained that the promotion that the Plantiff had expired.

26. During that same conversation it was explained the timeframes of the promotion and everything was described in detail. The dates are strict for the promotion and when questioned, Plaintiff was informed that the promotion transferred when the account was moved to the new house.

27. It was also explained again that most of the charges on the bill are mandated and not imposed by the Defendant. The representative told Plaintiff 2 charges are

imposed by the Defendant, the Regional Sports Fee and the Broadcast TV Fee, and are not mandated but all of the other charges are.

28. Defendant refuses to disclose the method of computation for the fees and taxes.

29. The fees and taxes, although somewhat consistent, are never completely consistent. When requested to define, various erroneous, incomplete, inconclusive responses are given without ever answering the question completely and directly.

30. Defendant directs consumers to their "understanding your bill" webpage but it does not give you the answers as to the computation method nor does it give you definite factual data. Defendant further fails to disclose what fees are mandated and what fees are Comcast imposed fees.

31. When the Plaintiff relocated 2 years prior to starting this service in April 2017, the Plaintiff requested that the Defendant change the address on the account as he was only moving a few miles away. It was explained at that time that the Defendant does not move the same account from one place to another but the account has to be closed completely and if there is an early cancellation fee, it would be waived so long as service was immediately reinstated at the new location and a completely new account would be set up.

32. As you can clearly see that is a major contradiction to what the Defendant's representative has explained in the past. The Defendant decides what rules they want to use at the time depending what best suits their needs at the time.

33. It was later explained on a call April 18, 2021 that the transfer of services is not a new account, that the services are transferred[1] to the new address but unfortunately by all appearances it is a new account. The Defendant unilaterally interprets the legal definition of transfer in whatever manor they want regardless of the true meaning or the consequence for their interpretation.

34. The Defendant provided a bill reflecting "Disconnected", a new account welcome email with the exact expectations for billing, the new account incentive by means of the gift card offered for setting up "New Service" specifically noted as for "New Accounts Only", and a new account number.

35. The Plaintiff has sent numerous letters to the Defendant demanding information from them explaining the bill and the fees that are being charged (attached hereto as "Exhibit B"), most recently the Plaintiff had interaction on July 7, 2020 with Bellini D, an Executive Customer Service Representative who informed the Plaintiff that he would email the demanded information no later than end of business on July 10, 2020.

---

[1] "To convey or remove from one place, person, etc. to another" *Transfer*, Black's Law Dictionary (5th ed. 1979)

36. On July 14, 2020 the Plaintiff had still not received a phone call or an email as promised so an attempt was made to contact Bellini D by phone and email. No response was received.

37. On July 17, 2020 another phone call was made to Bellini D with no response.

38. The Plaintiff frustrated, attempted to contact Executive Customer Service to speak to another representative to get an update. After about an hour and a half of transfers and disconnected calls Darren was able to inform the Plaintiff that the information that was requested was sent via USPS mail on July 11, 2020.

39. That information was later found to be fallacious and a direct lie in an attempt to pacify the Plaintiff.

40. On July 22, 2020 at 7:14pm an email was received by the Plaintiff (attached hereto as "Exhibit C"), outlining some of the fees related to the bill. This email is a copy and paste of their "Learn more about the taxes, fees, and other charges on your bill" (https://www.xfinity.com/support/articles/most-common-taxes-fees-surcharges-on-your-bill) on their website which is not what was requested and that was explained specifically to Bellini D on the July 7 phone call.

41. In the aforementioned email, Bellini D states:
    i. "This communication will confirm our final position with respect to the resolution of your billing concerns. As such, we consider this matter to be closed."

42. Here is yet another example of the level of frustration the Defendant induces on the consumer. The Plaintiff sent a request for specific details and the Defendant evades the request completely, responds with whatever they feel like, and unilaterally considers their response sufficient enough to close the matter.

43. The Defendant acts with such intentional and gross negligence, arrogance, wonton, and disregard for customer satisfaction that it is not difficult to see how they have received such consistently low customer satisfaction ratings.

44. The Defendant has the worst customer satisfaction rating of any public service company in the country and unfortunately has no initiative to raise it.

45. The company has become a monopoly and if you want to have cable or internet service, there are no alternatives in many areas, therefore they can do and operate as they wish without any consequence.

46. Comcast Corporation has become a menace to the communications industry and they seem to be proud of the negative reputation in which they hold and operate under.

47. On one occasion the Plaintiff attempted to terminate his service with the Defendant and was informed that there would be a charge for canceling the contract.

48. This was rather alarming news to the Plaintiff as he was not aware that he was under contractual obligations with the Defendant.

49. Initially the Defendant was very demanding and even went into detail how the contract was signed and agreed too explaining she could see information on her screen that it was signed via text message and a recorded phone call with the Plaintiff verbally agreeing to the terms.

50. Upon demand to produce said contract, it was later found that the Defendant had no copies of the contract, no proof of execution, and would waive the cancellation fee as a courtesy because no information could be found if the Plaintiff still wanted to cancel.

51. This is again a tactic used by the Defendant to deceive and defraud the consumer. It is unknown as to how many times the Defendant has unlawfully collected fraudulent cancellation charges from the consumer.

52. On the same April 18, 2021 phone call, the representative supervisor Plaintiff was communicating with informed the Plaintiff that he was charged $207.50 per month for service. When the Plaintiff drew the representatives attention to the bill that reflected $215.00 and that again was an additional error, the representative explained the additional $7.50 was for equipment fees. The Plaintiff again directed them to the bill where there was a $30.00 charge for equipment fees. The representative then explained that the charge was actually $37.50 and that the additional $7.50 was being billed under the package price not the equipment charges.

53. This is a direct violation of 47 C.F.R.§64.2401. The Defendant admitted to violating said regulation and informed the Plaintiff that is the way that their system reflects charges. He can see the "actual" charges on his screen but they add them into various categories to "hide" the charges.

54. This is the actual definition of Deception and the representative admitted to it on a recorded phone call.

## **COUNT I**

55. Plaintiffs re-allege and incorporate by reference as though fully set forth herein, paragraphs I-54 of this Complaint.

56. The Defendant violated 18 U.S.C.§1962 *et seq.* by fraudulently charging fees that could not be correctly described, falsely designated as mandated by the State of Florida, theft by deception, and racketeering.

57. The Defendant falsely misrepresents the charges on the bills to the consumer to obtain monies not owed to unjustly enrich the company.

58. Defendants, and each of them, acts and omissions being repeat by design, and over the period of the duration of this account and Plaintiff's prior account, are gross, reckless, malicious, reprehensible, and are shockingly unconscionable to the average person, entitling plaintiff to special, exemplary and punitive damages, loss of income caused thereby, and to permanent injunctive relief.

## **COUNT II**

59. Plaintiffs re-allege and incorporate by reference as though fully set forth herein, paragraphs I-58 of this Complaint.

60. The Defendant violated 15 U.S.C.§45 by means of unfair and deceptive billing practices.

61. The Defendant billed consumers, the Plaintiff, repetitively different charges on a monthly basis with no 2 months bills matching up.

62. The Defendants' deceptive practices are intentional and strategic.

63. According to the *Sperry and Huchinson*[2] ruling, 3 elements need to exist to prove unfair practices:

    a. Unjustified Consumer Injury

    b. Violation of Public Policy

    c. Unethical Conduct

64. Any intentional overcharge even by $.01 is considered an injury to the consumer. It is a charge that was "stolen" from the consumer that was undue to the collector.

65. An overcharge of any kind is considered, theft and thus a violation of law. Further, there are many statutes and acts that prevent such deliberate acts from occurring.

66. Any unfair, deceptive, and intentional act is considered unethical.

67. A company of the size of the Defendant can falsely bill $.01 per month to every one of their 55.8 million[3] consumers and in return the profits exceed $6.7 million annually for every 1 cent overcharge.

## **COUNT III**

68. Plaintiffs re-allege and incorporate by reference as though fully set forth herein, paragraphs I-67 of this Complaint.

---

[2] FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 92 S. Ct. 898 (1972)
[3] https://www.cmcsa.com/news-releases/news-release-details/comcast-reports-1st-quarter-2020-results

69. The Defendant violated 15 U.S.C.§45 by means of unfair and deceptive billing practices.

70. According to the Act, there are elements that need to be met to prove deception as well, those elements are as follows:

    a. Misleading

    b. Consumers Perspective

    c. Materiality

71. The aforementioned examples prove that the Defendant intentionally misleads the consumer.

72. The average consumer puts forth a level of trust in the Defendant that the calculations for the said charges are accurate and free of any discrepancies.

73. The average consumer would not choose to knowingly pay the Defendant money that is above what is owed to them even if just a few cents.

## **COUNT IV**

74. Plaintiffs re-allege and incorporate by reference as though fully set forth herein, paragraphs I-73 of this Complaint.

75. The Defendant violated Fla. Stat.§817.061 by Fraudulently Misrepresenting to the Plaintiff that he was contractually bound to the terms of service.

76. The Defendants Falsely Misrepresented contractual obligations to the Plaintiff and attempted to extort money from him for canceling the alleged contract early.

## **COUNT V**

77. Plaintiffs re-allege and incorporate by reference as though fully set forth herein, paragraphs I-76 of this Complaint.

78. The Defendant violated 47 C.F.R.§64.2401 by intentionally deceiving the Plaintiff by adding undisclosed fees hidden in alternate categories.

79. WHEREFORE, it is respectfully requested that this court enter a judgment in favor of the Plaintiff.

## **RELIEF**

80. Plaintiffs re-allege and incorporate by reference as though fully set forth herein, paragraphs I-79 of this Complaint.

81. The Plaintiff requests monetary compensation for compensatory damages in the amount to be determined at the time of trial as the Defendant is continuously billing the Plaintiff and the amount increases monthly;

82. The Plaintiff requests monetary compensation for punitive damages due to him for the general and, plus actual, direct, indirect, consequential, incidental

damages according to proof at trial, statutory, plus exemplary and treble damages in the amount of $500,000;

83. Injunctive relief barring the Defendant from any type of deceptive practices such as the examples set forth in this Complaint in the future to any and all of its customers;

84. Injunctive relief requiring the Defendant refund any fees due to its customers immediately for the same alleged violations known or unknown to the customer;

85. And whatever other relief this Court deems fit.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: May 10, 2021                                Respectfully Submitted,


/s/ Kyle A. Cavaliere


Kyle Cavaliere, *Pro Se*
9791 Roundstone Cir
Fort Myers, FL 33967
(484) 357-5347
Troubleman0403@gmail.com